Judith Wood for Nshan Ayanian The government attorney and I have had a brief discussion this morning. We're both in agreement. I know that the court has declined the request for judicial administrative closure, but we've discussed it again. The government attorney is not opposed to holding this case in abeyance. As you all are aware, I'm sure, the war in Armenia has started again. Pelosi is there in Armenia now. There's been a lot of political activity in Armenia in the last few days, as well as the beginning of another war with Azerbaijan. The respondent is an elderly gentleman with severe health problems, and he has an approval of an I-130 from both his mother and his sister. It might be current in a couple of months, at which point he could file with DHS for administrative relief. As you probably are aware, motions to reopen with DHS take at least two years for them to decide, but now the situation is such that it would be really deadly for him to return to Armenia. His priority date is only a few months away, and he is eligible for what's called a 601 waiver, a provisional waiver, which would allow him to get a lawful permanent resident status, since his mother is a citizen of the United States. Well, is the government willing to exercise prosecutorial discretion not to pursue this case? They haven't agreed yet, because they take a long time in adjudicating these motions. Unfortunately, now the situation is a little different, since the war has started again, and he's only a few months away from an approval of an I-130. Counsel, I'm not sure I understand if the government will hear from the government, but if the government is so agreeable to an abeyance or an administrative closure, why aren't they amenable to simply saying we're not going to pursue it while the rest of this goes on? We can decide the legal issue before us, get that off our docket, and then it's all within the administrative process. What's wrong with that from your point of view? I think that would be fine. Okay. Well, why don't we hear from the government? Good morning. It's Brooke Maurer for the Attorney General of the United States of America. I did want to speak. We did speak. With PD, DHS, it's backlogged 100 percent from where it was before. I mean, I can't make a determination for them to assign PD. And, yes, I agree with you. You could take this off your docket, and it would be put to them, and they would be able to determine it. Sorry, you used OPD as prosecutorial discretion. I'm sorry, but my lingo is that I'm carrying it along. Can you also slow down a bit? Sure, sure. Since basically the Sarkar case came down with judicial administrative closure coming into question, we usually only look to cases like usually for judicial administrative closure like this that has a potential path for relief. And because he does have an approved I-130 from two different people, and, like I said, I think the priority date as of now is March of 2007, and I think he has a June 2007 priority date. I do not know the timeline of when that's going to come through. That's why I agreed to consider it. When I reached out to DHS, they basically said, right now, the way they're handling his specific case, and don't pin me to this, it is different in every office, but they said with this specific case, what he's essentially asking for is us to file a joint motion to reopen, and it takes us between 12 to 18 months to review these requests and agree to it. And so in the meantime, are you willing to dismiss the final order of removal? This is a petition for review of the final order for removal, I guess, or actually the second motion to reopen. So if the government will then exercise its discretion to pursue this case, then that would take care of, according to opposing counsel, that would take care of their issue. I mean, this is within the government's discretion, right? Well, it's within DHS's discretion. It's not within mine, and they haven't authorized me to do that at this point. So what do you want us to do right now? At this point, I mean, no, I don't want to waste the judicial resources of the court. I mean, obviously, I know that that is one of the reasons that many of these cases, I mean, they've been pending for so long. And whether you render a decision or not, I mean, it's not going to affect his eligibility to adjust. And I'm happy, like I told Judith before, as I said, I'd be happy to talk this over in mediation if you wanted to see if I can get DHS to agree to a temporary stay of removal. But that's not something I have to give you right now at court. So, I mean, as far as, like, whether you decide this case, I mean, the only thing keeping him here right now, obviously, is, like, DHS knows he has a stay of removal with your court. She would have to seek, like, a supplement stay or something directly with DHS. But, like I said, at this point— Can I ask you a question? Given the real-world circumstances in Armenia right now, is DHS actually removing people to Armenia? I actually got confirmation on Friday that, yes, they are in fact still removing people to Armenia. Oh, my goodness. But on the other hand, it seems that he's been here for, what, 15 years since his original order of removal, and they haven't gotten around to trying to remove him during that time. I mean, yes. But agreed. And, like, full disclosure, I mean, like, yes. I mean, I don't know of any cases on my docket personally where somebody— And I have other Armenian cases. But I do know that he is in the program where he has to repeatedly check in with ERO, and they are aware of his stay right now. But, like I said, I don't know what will happen in the future. And that's all. I mean, that's all. What I have for you is everything that I have right now with DHS. So are you requesting that we send this to mediation? I mean, if the court is amenable to that, that gives me a little bit more push. With DHS, it really does. It allows me to basically get them to kind of, like, move their feet a little faster and maybe agree to a stay. But, I mean, that's just—I mean, other than that, like I said, I understand the court not wanting to keep this, like, pending on their docket any longer. It's a 2000—you know, it's an old case, and I understand. But I also understand having a visa pending, and, you know, I get both sides. When you were ripping through that, I heard something like 07—27? Or is there something—did I mishear that? No, it's the priority date for the fourth preference visa that he has. And that date was 07 or 27, or what did I hear? It's the 22nd of March, 2007. I see. So his date—his priority date is way back. It will become current, you think, within a few months. Was that the— Yes, because right now, any applications filed before March 22nd, 2007 is available to get their visa. Okay. His priority date is June 22nd of 07. So as soon as they get to June, then he will qualify to adjust. And when does that happen? When will that happen? That is another question because there's so many people in line and how fast they get approved. It's like that's another—that's the thing is there's so many out-of-your-control things. I can't give a definitive answer, and I wish I could. I can tell you that we looked—both Ms. Wood and I looked, and the priority date remained the same for both September and October. It is still March. Is there anything else I could help the court with? I'm happy to answer any additional questions if you have any. I don't think so. Counsel, for Petitioner, do you wish to say anything else? Yes. The priority date, the Department of State determines the current—whether something's current or not. It kind of moves forward and backwards. It's hard to predict, but it looks like it might move forward. It's only two months, so oftentimes these things do move forward. If we could hold this case in abeyance for a while, he very well may be able to get his status organized here and not be deported. So we're asking— Excuse me. Are you conceding that you don't have an argument on the merits? That we don't have what? You have no argument on the merits. Are you conceding that? In a sense, yes. I would fall on the mercy of the court and let this case trail until, in fact, he can get a green card rather than litigate the merits of the case. Yes. All right. Thank you. So I'm going to defer submission of a Yanian v. Garland pending our conference on the matter. Thank you very much, counsel, for appearing this morning and advising the court of your positions. The next case we will take—oh, I'm sorry. Mejia Mejia has been referred to mediation.
judges: Boggs, WARDLAW, IKUTA